**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| M. KATHLEEN McKINNEY, Regional Director of Region 15 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>  Petitioner,<br><br>v.<br><br>VELOX EXPRESS, INC.,<br><br>  Respondent. | No. 17-cv-2311-SHL-dkv |

**ORDER DENYING PETITION FOR TEMPORARY INJUNCTION**

On May 5, 2017, Petitioner National Labor Relations Board ("NLRB" or the "Board") filed a Complaint and Petition for Temporary Injunction under Section 10(j) of the National Labor Relations Act (the "Act"). (ECF No. 1.) In this Petition, the NLRB seeks immediate injunctive relief while the merits of this matter are being considered through the NLRB's administrative process. After granting Petitioner's Motion to Expedite and denying Petitioner's Motion to try Petition on Affidavits and Exhibits (ECF Nos. 8, 14), the Court set a Preliminary Injunction Hearing for June 7, 2017, which was then continued at the request of the Parties to June 26, 2017, at 10:30 a.m. Present at the hearing were Linda M. Mohns, counsel for Petitioner, and Benjamin C. Fultz, Emily Rachael Dahlman Warf and Matthew G. Gallagher, counsel for Respondent. Jeannie Edge and Jill Cross testified as witnesses for Petitioner and Larry Lee testified as a witness for Respondent. The Parties briefed the issues prior to the hearing. (ECF Nos. 1 & 12.)

Petitioner alleges that Respondent Velox Express Inc. ("Velox") has committed "an array of serious unfair labor practices" in violation of the Act, including retaliation when it terminated the employment of Jeannie Edge ("Ms. Edge"), who Petitioner's characterize as "the leading advocate for the employees' workplace concerns." (See ECF No. 7-1.) Petitioner seeks injunctive relief to prohibit Velox from continuing to engage in unfair labor practices while this matter is pending before the Board, and to require Velox to take affirmative steps to come into compliance with the Act, including reinstating Ms. Edge. (ECF No. 1 at 6-8.) Velox contends that, applying the applicable standard, there is not reasonable cause to believe that it has violated the Act and the injunctive relief requested is not "just and proper." Therefore, Velox argues that the Court should deny the Petition.[1] (ECF No. 12-2 at 22-25.)

Upon consideration of the Petition, the Parties' memoranda, the record, affidavits, exhibits and testimony at the hearing, the Court **DENIES** Plaintiff's Petition for injunctive relief under Section 10(j) of the Act.

## **BACKGROUND**

Velox is a logistics business that offers pickup and delivery services, including transportation of medical specimens. (ECF No. 12-2 at 4.) Jeannie Edge began working as an independent contractor medical courier for Velox on July 27, 2016, after signing a one-year renewable contract with Velox that could be terminated by either party with 24 hours notice. (ECF No. 1-2 at 3; ECF No. 12-2 at 8.) She was supervised by Carol Christ, who worked out of Velox's Memphis office. (Id. at 3.)

---

[1] Velox also challenged the jurisdiction of the Court and the NLRB in this matter. As the Court stated at the hearing, it has jurisdiction to hear the Petition based on Velox doing business in Memphis, and it declines to consider the issue of the NLRB's jurisdiction, which is properly left for the Board.

During Ms. Edge's employment, Velox had a contract with Associated Pathologists, LLC d/b/a Path Group ("Path Group"), for deliveries between health care provider offices and Path Group's Nashville, Tennessee lab. (ECF No. 12-2 at 4.) Edge's job was to serve as a driver for part of this route in the Little Rock, Arkansas area, and her duties included picking up medical specimens from specific sites, placing specimens in lockboxes at central locations and notifying dispatchers when "will call" specimens were picked up. (ECF No. 1-2 at 3.)

The NLRB alleges that Velox engaged in several unfair labor practices. First, Petitioner alleges that drivers were prohibited from discussing workplace issues with each other. According to Petitioner, Velox drivers were voicing concerns to each other regarding unknown pay calculations, low paychecks, little flexibility as independent contractors and working conditions, and that Ms. Edge took these concerns to Velox's representatives in June and July of 2016. (Id.) At the hearing, Ms. Edge testified that other drivers would come to her with workplace concerns, which she then communicated to either Ms. Christ or John Willis, another Velox manager. On July 24, 2016, Ms. Christ sent an email to the drivers explaining how pay periods were calculated, how drivers should do their jobs, and stating, in relevant part, that, "[i]f you work at the Memphis office, Little Rock AR, Jackson TN or Jackson MS, you are part of the Memphis branch and should report directly to me. Not John Willis and not Jim Gibson. Any pay issues, complaints, concerns, requesting days off or calling out of work should go through me. No one else." (Id.; ECF No.1-1 at PageID 106.) The NLRB characterizes this email as initiating a "Rule" limiting the drivers' ability to discuss issues with the company amongst the drivers or other third parties. (Id. at 6-7.) On July 25, 2016, Ms. Edge responded to this email, stating to Ms. Christ that drivers were not being treated as independent contractors because they

3

had little flexibility, had to request days off, were required to wear uniforms and could not hire their own backup drivers. (See ECF No. 1-1 at PagEID 105.)

The second allegation involves new "route driver agreements" emailed to the drivers on August 1, 2016, by Ms. Christ, which were to be signed and returned. (Id. at 7-8.) This agreement included a statement that a driver's negligence or a failure to follow Defendant's procedures would lead to a fine of $150 or removal. (Id.) The NLRB contends that the $150 fine imposed by the route driver agreement was retaliatory for the concerted activities of Ms. Edge and the other employees, including the drivers' challenges to Velox's treatment of them. (ECF No. 1 at 4-5.)

Finally, the NLRB challenges Ms. Edge's termination, which occurred on August 21, 2016.[2] (ECF No. 1-2 at 9.) The NLRB contends that Velox terminated Ms. Edge in retaliation for her protected communications, and that Velox violated the Act because, through this termination, they engaged in conduct that interfered with, restrained and coerced employees in the rights guaranteed by the Act. (Id. at 5.) The NLRB seeks temporary injunctive relief from the Court to require Velox to cease violating the Act, to rescind the "rule" established in Ms. Christ's July 24, 2016, email, to rescind the route driver agreements and to reinstate Ms. Edge on an interim basis until the final resolution of the Board proceedings. (ECF No. 1 at 6-8.) The NLRB hearing is currently scheduled for July 24, 2017. (See ECF No. 12-2 at 4.)

Velox responds to Plaintiff's Petition by arguing that the NLRB has not established reasonable cause that it is in violation of the Act. First, Velox contends that Ms. Edge's termination was not due to any alleged protected activities but rather because she failed to properly account for the correct number of specimens for Path Group on multiple occasions and

---

[2] Ms. Edge filed her charge with the NLRB on September 12, 2016. (ECF No. 1 at 2.)

4

caused shipments to be delayed. (ECF No. 12-2 at 11.) Velox contends that these errors occurred primarily in July 2016, and, ultimately, after a critical error on August 15, 2016, where Ms. Edge left a specimen in a client's parking lot, Velox terminated her contract because Path Group demanded that Ms. Edge no longer handle its business. (Id. at 12.) Velox argues that Ms. Edge even acknowledged in her deposition that she was terminated for her service errors. At the hearing, Larry Lee, the Vice President of Velox, testified that he made the decision to terminate Ms. Edge and that, at the time of his decision, he had no knowledge of any of the communication Ms. Edge had with other drivers regarding working conditions at Velox. (Id.) As to the route driver agreements, he testified that the standards set out in the agreements were required by their Little Rock client, Path Group, in response to driver errors that occurred during that time.

Finally, as to the July 24, 2016, email from Ms. Christ, Velox contends that Ms. Edge acknowledged that she understood that email to be an explanation of the hierarchy of Velox. Moreover, at the hearing, Velox submitted evidence that it sent a company-wide email on May 24, 2017, clarifying its position that Velox does not intend to inhibit or discourage any communication between drivers or independent contractors regarding workplace conditions but only directs individuals with issues to communicate to their respective supervisors, rather than going to another person in the management hierarchy. Velox submits that this follow-up communication effectively rescinds any previous understanding, which it argues was a misunderstanding, that Velox intended to restrain concerted activity.

## **STANDARD OF REVIEW**

Twenty-nine U.S.C. § 160(j) provides that after the NLRB issues a complaint charging that a person is engaging in an unfair labor practice, the NLRB may petition the district court for appropriate temporary relief or a restraining order. 29 U.S.C. § 160(j). "To grant such relief, the

5

district court is required to find both (1) 'reasonable cause' to believe an unfair labor practice has occurred; and (2) that injunctive relief with respect to such practices would be 'just and proper.'" Muffley ex rel. N.L.R.B. v. Voith Indus. Services, Inc., 551 F. App'x 825, 827 (6th Cir. 2014) (quoting Ahearn v. Jackson Hosp. Corp., 351 F.3d 226, 234 (6th Cir. 2003)). "Since unfair labor practice charges are to be adjudicated by the Board, subject to judicial review, courts must be mindful not to adjudicate the merits of such charges in deciding whether to grant relief in the ancillary § 10(j) proceedings. Id. (citing Gottfried v. Frankel, 818 F.2d 485, 492 (6th Cir. 1987; Shaub v. W. Mich. Plumbing & Heating, Inc., 250 F.3d 962, 969 (6th Cir. 2001)).

## ANALYSIS

I.  Whether the Board has Established "Reasonable Cause" that Velox Violated the Act

Petitioner must first establish "reasonable cause" in its quest for temporary injunctive relief from the district court. However, the burden of establishing reasonable cause is "relatively insubstantial." Schaub v. W. Mich. Plumbing & Heating, Inc., 250 F.3d 962, 969 (6th Cir. 2001). Reasonable cause "requires only that the Board's legal theory underlying the allegations of unfair labor practices be 'substantial and not frivolous' and that the facts of the case be consistent with the Board's legal theory." Voith Indus. Servs., 551 F. App'x at 830 (quoting Ahearn, 351 F.3d at 237). "Because the district court is not to resolve conflicting evidence or weigh credibility in a 10(j) proceeding, its findings cannot be clearly erroneous as long as facts exist that could support the Board's theory." Id.; see Aheam, 351 F.3d at 237 ("Indeed, fact-finding is inappropriate in the context of a district court's consideration of a 10(j) petition.").

Petitioner argues that there is reasonable cause to believe that Velox violated the Act by "implementing a rule that prohibits employees from discussing work concerns with other employees and with third parties, and which requires employees to take their concerns only to

6

management; retaliating against employees by requiring that they sign route driver agreements that imposed more onerous terms and conditions of employment; and firing Jeannie Edge." (ECF No. 1-2 at 1-2.) Petitioner contends that this conduct by Velox "has negatively affected employees' willingness to engage in protected concerted activity for mutual aid or protection as guaranteed by Section 7 of the Act." (Id. at 2.)

Under 29 U.S.C. § 157, "[e]mployees shall have the right to self-organization, to . . . bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" It is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157[.]" 29 U.S.C. § 158. Moreover, to establish that an employer has unlawfully terminated or laid off an employee in violation of the Act, the NLRB need demonstrate that "(1) the employee was engaged in protected activity; (2) that the employer knew of the employee's protected activity; and (3) that the employer acted as it did on the basis of [anti-concerted activity] animus." FiveCAP, Inc. v. N.L.R.B., 294 F.3d 768, 777 (6th Cir. 2002) (citing N.L.R.B. v. Gen. Fabrications Corp., 222 F.3d 218, 226 (6th Cir. 2000)).

In response to the Board's argument that the testimony and documents submitted in this matter establish "reasonable cause," Velox argues that the proof actually demonstrates frivolousness. As a threshold issue, Velox argues that the drivers are independent contractors, not employees, making the Act inapplicable here. In asserting this position, Velox relies in part on the testimony of Ms. Edge, who stated that the drivers are independent contractors. In addition, Velox contends that the July 24, 2016, email instructed drivers as to the hierarchy within the Company, letting them know who they report to but <u>not</u> prohibiting drivers from talking among themselves or to others outside Velox. As for the route driver agreement, Velox

7

states that Path Group demanded those provisions and that they were not imposed in retaliation for drivers engaging in protected activity. Finally, Velox argues that Ms. Edge was fired because of her mistakes and the impact of those mistakes on people's lives, not because of any protected activity she engaged in.

While Velox may ultimately prevail on all of these points when these issues are presented to a trier of fact who is able to make credibility determinations, this Court is not in that position. The evaluation of each of these issues requires some level of weighing of the evidence, although the scales tilt dramatically toward Velox on some. For example, the Board presented no proof to contradict Velox's contention that the route driver agreement was dictated by Path Group, not imposed on the drivers because of Velox's animus. Regardless of the degree of the tilt, however, the Court finds that all contentions by the Board pass the frivolousness test.

In essence, to assess Respondent's position here would require the Court to adjudicate the merits of Petitioner's claims, which the Court may not do in ruling on a § 10(j) petition. See Lindsay v. Mike-sell's Potato Chip Co., 2017 WL 2311295, at *7 (W.D. Ohio May 26, 2017) (citing Voith Indus. Servs., 551 F. App'x at 827). The fact that such an analysis would be necessary supports a finding that Petitioner has carried its "relatively insubstantial" burden of establishing reasonable cause. See Schaub, 250 F.3d at 969. Therefore, the Court finds that Petitioner has established "reasonable cause" that Velox is in violation of the Act.

II. Whether Injunctive Relief is "Just and Proper"

Even where there is reasonable cause, the proposed injunctive relief must be "just and proper." Voith Indus. Servs., 551 F. App'x at 833 (citing Ahearn, 351 F.3d at 239). "Congress' adoption of § 10(j) reflects its 'view that interim injunctive relief to restore and preserve the status quo, pending final Board adjudication, may be required to avoid frustration of the basic

8

remedial purpose of the [NLRA] and possible harm to the public interest." Id. (quoting Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 28-29 (6th Cir. 1988)). The relief provided by the Court under § 10(j) "should be only that which is 'reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power.'" Id. (quoting Gottfried, 818 F.2d at 494). The status quo to be preserved or restored is what existed prior to the alleged violations of the Act. Fleischut, 859 F.2d at 30 n.3. "Th[e] Court has discretion in determining whether or not the just and proper standard has been met, but it must explain the reasons for its determination." Mike-sell's Potato Chip Co., 2017 WL 2311295, at *7 (citing Calatrello v. Automatic Sprinkler Corp. of Am., 55 F.3d 208, 214 (6th Cir. 2015); Fleischut, 859 F.2d at 30).

At the hearing, Petitioner argued that Velox violated the Act and that its employees are foregoing engaging in concerted activity out of fear of retaliation. It also stated that the company's rescission of the July 24th email and Ms. Edge's reinstatement would "send a message" that their rights are protected. However, as to concerted activity by current employees, there is no evidence beyond Ms. Edge's own testimony that drivers at Velox other than her were engaging in concerted activity, must less that they are now afraid to do so. Even Ms. Jill Cross, a former Velox driver who testified at the hearing on behalf of Petitioner, stated that the drivers generally believed that Ms. Edge was fired for a "missing specimen," not because of the alleged protected activity. Although she did also state that drivers have been less inclined to gossip about Company issues since Ms. Edge's termination, there is no proof that they have been stymied in any protected activity. In addition, as to the route driver agreement, Petitioner is essentially asking this Court to substitute its power for that of the Board by determining that the agreement violates the Act, without any argument as to why the relief requested is "reasonably

9

necessary to preserve the ultimate remedial power of the Board." Voith Indus. Servs., 551 F. App'x at 833.

Petitioner has not pointed to a remedial power of the Board that will be ineffective unless this Court provides the requested injunctive relief. Rather, Petitioner's argument appears to the Court to be centered on its contention that Velox has violated the Act and must be stopped. As the Sixth Circuit has cautioned, the district court "must be careful that the relief granted is not simply functioning as a substitute for the exercise of the Board's power." Fleischut, 859 F.2d at 30. "The Sixth Circuit has explained that Congress allowed for injunctive relief under Section 10(j) of the Act 'because in some cases the enforcement of a Board order after the Board's normal processes is ineffective to undo the effect of unfair labor practices.'" Mike-sell's Potato Chip Co., 2017 WL 2311295 at *7 (quoting Fleischut, 859 F.2d at 30). The Board's power will be preserved here regardless of the entry of an Injunction. For example, should the Board find that Velox violated the Act, it could award Ms. Edge back pay, reinstate her to her prior position, rescind any previous agreements or "rules" promulgated by Velox, and/or reimburse any impermissible "fines" that may have been imposed by Velox under the route driver agreements. The available relief would be effective absent this Court's intervention at this stage.

Moreover, this charge arose over nine months ago. The NLRB now seeks emergency extraordinary relief without any showing that any interference, restraints or coercion has occurred in the time since Ms. Edge's termination. In fact, Velox has effectively already addressed any misinterpretation of the July 24 email allegedly prohibiting communication amongst employees or independent contractors regarding workplace complaints.

For the above reasons, the injunctive relief requested by Petitioner would not be just and proper here.

## CONCLUSION

Petitioner has failed to establish that the injunctive relief requested is "just and proper" under the circumstances. Therefore, the Court **DENIES** the Petition for entry of a temporary injunction, and **DISMISSES** all claims by Petitioner against Respondent in this action.

**IT IS SO ORDERED**, this 29th day of June, 2017.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
UNITED STATES DISTRICT JUDGE